[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiffs have appealed from an assessment of damages made by the defendant for the taking of a portion of their property in the Town of Avon as shown on a map entitled: "Town of Avon Map Showing Land Acquired From Louis H. Goldberg et al by the State of Connecticut, Intersection Improvement Routes 10 44, Scale 1" = 40', January 1990, Robert W. Gubala Transportation Chief Engineer-Bureau of Highways. "A copy of the map was introduced into evidence as Exhibit A. The portion taken was also described in the complaint.
The parties stipulated that the date of the partial take was July 25, 1990, and that the sum of $112,200 was deposited by the defendant with the Clerk of the Superior Court and withdrawn by the plaintiffs.
The plaintiffs' property consists of a parcel of 3 acres, more or less, located on the southerly side of Route 44 in Avon and having approximately 370.46 feet of frontage thereon. The plaintiffs' property also has approximately 132.49 feet of frontage on Route 10 to the east and approximately 457.07. feet of frontage on a public road known as Nassau Way to the south. The site is basically level and CT Page 4370 located in a CPA Commercial Park Zone. It is served by public water, electricity, telephone and gas. There is an on-site sanitary disposal system. The site is improved with a 21,000 square foot, more or less, one-story masonry retail furniture outlet with a bituminous concrete parking area, underground utility connections, underground septic tank and leaching field, and landscaping consisting of lawn area, shrubs and trees including ten shade trees. The property is in the northeastern section of Avon and is at the foot of Avon Mountain. The neighborhood is a compatible mix of commercial property and vacant land.
The property taken consists of 0.273 of an acre, more or less, along the northerly portion of the plaintiffs' property fronting on Route 44. It is 20 more or less feet deep at its westerly end and 35 more or less feet deep at its easterly end. The frontage along the widened Route 44 is 370 feet more or less. Four of the shade trees were within the area taken.
Permitted uses within a Commercial Park A zone are: Business and Professional offices; Financial Institutions; Personal services; Restaurants; Movie Theaters; Research and Experimental laboratories; Printing, Publishing and Graphic Arts establishments; Hotels and Motels; and Retail stores provided that the minimum landscaped area is at least 50% of the total lot area. The minimum front yard permitted is 40 feet, except that yards abutting a state highway shall be 75 feet. Maximum lot coverage is 20%.
Donald G. Leavitt and Robert S. Palmer, appraisers retained by the plaintiffs, testified as expert witnesses. They opined that the highest and best use for the subject property was utilization for any use permitted in a CPA zone, and that the present use as a stand-alone retail operation is the highest and best use as of the time of their appraisal. It was their opinion, using the cost approach that the value of the land and improvements before the take was $2,982,600. Using comparable sales, they opined that the value of the land at ten dollars per square foot before the take was $1,306,800. They opined that the structure had a value before the take of $1,615,000. The other improvements were given a value by these appraisers of $60,800. After the take, using the same value per square foot, they opined that the land had a value of $1,187,900. They assigned severance damages to the remainder because the front yard is reduced to 40 feet and will be nonconforming, and because the landscaping coverage is reduced to 48.36% and will be nonconforming. The permitted building coverage of 20% will be reduced from 26,136 square feet to 23,758 square feet, a loss of 2,378 square feet. Although the present building is about 21,660 square feet, the loss of CT Page 4371 permitted coverage could affect possible expansion plans in the future. The reserve area for possible expansion of the septic system is also affected. Included within the area taken were four trees. The plaintiffs' appraisers calculated severance damages at 5% of the value of the structure which amounts to $80,750, reducing the value of the structure after the take to $1,534,000 rounded. They reduced the value of the other improvements after the take by $2,378 for the lawn taken and $1,000 for the four trees, leaving an after take value for the other improvements of $57,400 rounded. They opined that the total value of the land and improvements after the take was $2,799,300. Their estimate of damages was therefore $203,300.
Linda McQuillan offered expert testimony as an appraiser for the defendant. She was also of the opinion that the current use is the highest and best use of the property. Using the same comparable sales as those used by the plaintiffs' appraisers, she concluded that the land had a value of $9.50 per square foot. She agreed that $10.00 per square foot was reasonable. She opined that the value of the land before the take was $1,241,460. It was McQuillan's opinion that the land after the take had a value of $1,129,720 and that the four trees taken had a value of $400. She therefore estimated damages at $112,200. She did not consider that the take had any adverse effect on the structure and did not assign severance damages.
The highest and best use of the property continues to be its present use. There was nothing in the testimony to suggest that expansion beyond the permitted building coverage is immediately likely. However, the property has become nonconforming because of the portion taken by the state. This restricts future use and is something for which the defendant must compensate the plaintiffs. Even though it seems likely that variances could be obtained if reasonably required, a reasonable buyer would be likely to discount an offer because of the nonconformities.
Based upon my viewing of the subject property, and after considering all the evidence offered by the parties and my own knowledge of the elements constituting value, it is concluded that the damages sustained by the plaintiffs are $150,000. Judgment may enter for the plaintiffs for the further sum of $37,800 in addition to the sum of $112,200, which was deposited with the clerk of the superior court by the defendant and withdrawn by the plaintiffs, with interest on such further sum of $37,800 from the date of taking to the date of payment, together with an allowance towards their appraisal fees of $1,500. CT Page 4372
George D. Stoughton, State Trial Referee